IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 MAR 30  P 2: 42

TERRA P. HACKETT, CL
U.S. DISTRICT COURT
MIDDLE DISTRICT AL

| | |
|---|---|
| ADAORAH ABOR-WATSON )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>GWEN M. COOPER, M.D.; and )<br>EAST ALABAMA WOMEN'S )<br>CLINIC, P.C., an Alabama professional )<br>corporation, )<br>)<br>Defendants. ) | CIVIL ACTION<br>FILE NO. 2:06cv287-VPm<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW the Plaintiff named above and hereby states her causes of action and claims for relief against the Defendants as follows:

### PARTIES

1.  Plaintiff Adaorah Abor-Watson (hereinafter "Abor-Watson") is a resident of the state of Georgia currently residing in Cobb County at 4621 Waters Edge Lane, Acworth, Georgia 30101.

2.  During and continually since February 2004, and all other times material to this action, Defendant Gwen M. Cooper, M.D. (hereinafter "Cooper") was and is a physician licensed to practice medicine in the state of Alabama, whose specialty was and is obstetrics and gynecology.

1

3. Upon information and belief, Defendant Cooper is a citizen of the state of Alabama and currently resides in Lee County, Alabama at 1312 Gwen Mill Drive, Opelika, Alabama 36801.

4. Defendant Cooper may receive service of process at her residence located at 1312 Gwen Mill Drive, Opelika, Alabama 36801, or at her current place of employment, East Alabama Women's Clinic, P.C., 502 E. Thomason Circle, Opelika, Alabama 36801.

5. During and continuously since February 2004, and at all other times material to this action, Defendant East Alabama Women's Clinic, P.C. (hereinafter "E. Alabama Women's Clinic") was and is a for-profit professional corporation organized and existing under the laws of the state of Alabama, with its principal place of business located at 502 E. Thomason Circle, Opelika, Alabama 36801.

6. Defendant E. Alabama Women's Clinic is a corporate citizen of the state of Alabama and may receive service of process through its registered agent, Gwen W. Cooper, M.D., located at 1995 Pepperell Parkway, Opelika, Alabama 36801, or at the location of the business at 502 E. Thomason Circle, Opelika, Alabama 36801.

7. At all times when she provided medical care to Plaintiff Abor-Watson, including specifically the period February - April 2004, Defendant Cooper was and is an owner, shareholder, officer, manager or employee of Defendant E. Alabama Women's Clinic and/or she functioned through her actual, apparent or ostensible authority as an agent of that professional corporation. As such, Defendant E. Alabama Women's Clinic was and is legally liable, either through the doctrine of *respondent superior* and/or ostensible agency, for any professional negligence, malpractice and/or ordinary negligence which, as Plaintiff alleges herein, was

committed by Defendant Cooper during the course of her providing medical care and treatment to Plaintiff Abor-Watson during April 2004.

## JURISDICTION AND VENUE

8. Personal jurisdiction over each of the Defendants is proper before this Court because each Defendant is a citizen of Alabama, each Defendant regularly conducts business in the State of Alabama, and the tortious conduct of each Defendant which gives rise to this cause of action took place in the state of Alabama.

9. Pursuant to 28 U.S.C.S. 1332(a), subject matter jurisdiction is proper before this Court based upon complete diversity of citizenship because all of the parties are citizens of different states, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

10. Venue over Defendants Cooper and E. Alabama Women's Clinic is proper before this Court pursuant to 28 U.S.C. §§ 1391(a) and 1391(c).

## CHOICE OF LAW

11. The incidents and the tortious conduct which caused Plaintiff's damages and which gives rise to this cause of action took place in Opelika, Alabama. Therefore, the substantive law of Alabama applies to and governs the tort claims asserted by Plaintiff herein.

## FACTS

12. This action is brought to recover special and general damages arising from serious permanent bodily and personal injuries suffered by Plaintiff Abor-Watson due to ordinary negligence, professional negligence and malpractice committed by Defendant Cooper while providing medical care and treatment to Plaintiff Abor-Watson during April 2004. Plaintiff's

cause of action is based upon the Alabama Medical Liability Act (Ala. Code §§ 6-5-480 et. seq.) and the common law of Alabama concerning simple or ordinary negligence.

13. Beginning about February 11, 2004, Plaintiff Abor-Watson became the patient of Defendant Cooper and her practice group, Defendant E. Alabama Women's Clinic. Between at least February 2004 and at least April 2004, Defendant Cooper and other physicians at the E. Alabama Women's Clinic provided obstetric and gynecological care to Plaintiff Abor-Watson. Such care and treatment was provided to Plaintiff Abor-Watson while Defendant Cooper was an owner, shareholder, officer, employee, or other agent of Defendant E. Alabama Women's Clinic.

14. At all times between at least February 2004 and at least April 2004 when Defendant Cooper provided medical care and treatment to Plaintiff Abor-Watson as discussed below, there existed a doctor-patient relationship.

15. The medical records indicate that Plaintiff Abor-Watson first received obstetrical treatment from Defendant Cooper on or about February 11, 2004. At that time, Plaintiff was approximately 19-20 weeks pregnant with an expected delivery date of July 2, 2004, based upon previous findings of an ultrasound performed on January 30, 2004. Plaintiff Abor-Watson first saw Defendant Cooper on February 11, 2004 for continued prenatal and obstetrical care, and for the evaluation and treatment of multiple uterine fibroids with which Ms. Abor-Watson had been diagnosed.

16. The medical records indicate that on March 1, 2004, Plaintiff Abor-Watson telephoned Defendant E. Alabama Women's Clinic's office and reported that her underpants were "staying wet' since the previous day. Plaintiff Abor-Watson was instructed to go the labor and delivery department of the East Alabama Medical Center located at 2000 Pepperell Parkway, Opelika, Alabama 36801-5456.

17. As instructed, Plaintiff Abor-Watson presented to the East Alabama Women's Center at approximately 3:00 p.m. on March 1, 2004. There, she was admitted for possible PROM (premature rupture of membranes). Upon evaluation, she was noted to have advanced cervical dilation at approximately 22+ weeks gestation.

18. After admission to East Alabama Women's Center, medical treatment was provided in an attempt to delay the start of Ms. Abor-Watson's labor. However, by March 11, 2004, her labor could not be stopped and Ms. Abor-Watson had a spontaneous vaginal delivery of a pre-term baby at 24 weeks. Unfortunately, the baby did not survive.

19. Plaintiff Abor-Watson remained hospitalized at East Alabama Medical Center until March 13, 2004.

20. On April 1, 2004, Plaintiff Abor-Watson returned to E. Alabama Women's Clinic with complaints of pelvic pain, chills, fever and vaginal discharge. Ms. Abor-Watson was examined by Bonita C. Jones, M.D., who recommended that Ms. Abor-Watson be admitted to the East Alabama Medical Center. That afternoon, around 4:30 p.m., Dr. Jones admitted Ms. Abor-Watson to the East Alabama Medical Center with a diagnosis of "post-partum endomyometritis."

21. After her admission to East Alabama Medical Center, Ms. Abor-Watson was evaluated by Dr. Cooper, who diagnosed endometritis with possible retained products of conception based on the findings of an ultrasound.

22. On April 2, 2004, Dr. Cooper performed a suction dilation and curettage (D&C) procedure. In her operative report, Dr. Cooper wrote:

> "the cervix was noted to be dilated to accommodate a #10 suction curet and the cavity was noted to be only approximately 8 cm and there really was not a whole lot of tissue except some blood clots

and a scant amount of tissue. On exam, she did have an 18-20 week size uterus, which is probably all of her fibroids. The suction dilation and curettage was also negative with gentle curettage and hemostasis was noted to be adequate."

23. Ms. Abor-Watson was discharged from the hospital on April 6, 2004.

24. Specimens from the April 2 D&C were sent for pathological analysis. A "Surgical Tissue Report," dated April 6, 2004 (which is contained in the medical records obtained from Defendant E. Alabama Women's Clinic) concluded, "Suction D&C: Hyalinized tissue, proliferation endometrium and blood clots (no chorionic villi present)." On her copy of this report, Dr. Cooper made a handwritten note which states, "no products of conception or retained products clarified on 4/7/05 on review."

25. Ms. Abor-Watson returned to the E. Alabama Women's Clinic on April 15, 2004 with complaints of "left sided lower abdominal pain with occasional radiation down her thigh with numbing and tingling." She was examined by Njideka Obikewe, M.D. who noted on his physical exam that Ms. Abor-Watson's "Lower abdomen is slightly protuberant." Dr. Obiekwe also recorded that "Bimanual exam shows 12 weeks size uterus, very irregular, tenderness to palpitation of the irregularities on the left."

26. On April 20, 2004, Ms. Abor-Watson again returned to the E. Alabama Women's Clinic where she was examined by Dr. Cooper. Ms. Abor-Watson again complained of continued pelvic pain and the fact that she could not eat. In the records, Dr. Cooper did not describe what examination she performed, but concluded "abdomen benign." Dr. Cooper mistakenly believed that Ms. Abor-Watson's symptoms were due to "probable degenerative myomas." Dr. Cooper's only plan was to recheck Ms. Abor-Watson with an ultrasound in July.

27. No ultrasound was performed or recommended by Dr. Cooper in connection with this April 20, 2004 visit.

28. On April 25, 2005, Plaintiff Abor-Watson presented to the emergency room of Wellstar Kennestone Hospital (located in Marietta, Georgia) with complaints of severe left lower quadrant pain, nausea and vomiting. After two days of evaluation, it was determined that Ms. Abor-Watson likely suffered sigmoid colitis and peritonitis, and a recommendation was given that exploratory abdominal surgery be performed.

29. On April 27, 2005, Ms. Abor-Watson underwent exploratory laparotomy and rigid sigmoidoscopy by Matthew Novak, M.D. at Wellstar Kennestone Hospital. During this major surgery, Dr. Novak discovered and noted in his operative report that Ms. Abor-Watson had suffered "Perforated sigmoid colon with surrounding pericolic abscess, with exudative peritonitis, perforated uterine fundus, right pyosalpinx, pyogenic left ovary, extensive intraabdominal adhesions." Because of the bowel injury, Dr. Novak performed a segmental sigmoid colectomy with end colostomy and Hartmann's pouch.

30. During this April 27 operation, Dr. Novak requested an intraoperative consult from Rhonda Williams, M.D. due to the findings of uterine perforation, extensive pelvic adhesions, and left tuboovarian abscess. Dr. Williams agreed with Dr. Novak that the left ovary and fallopian tube would require resection, so she performed a left salpingo-oophorectomy (removal of the left ovary and fallopian tube) and performed lysis of the extensive pelvic adhesions.

31. Following this surgery, Ms. Abor-Watson received various post-operative care and remained hospitalized at Wellstar Kennestone Hospital until May 7, 2004.

32.  Following her May 7 discharge from Wellstar Kennestone Hospital, Ms. Abor-Watson required the use of a colotomy until surgery was performed by Henry J. Zielinski, M.D. on July 27, 2004 to "take down" that colostomy. Ms Abor-Watson remained in the hospital at Wellstar Kennestone until August 3, 2004.

## COUNT I

### THE NEGLIGENCE AND MALPRACTICE OF DEFENDANT COOPER

33.  Plaintiff incorporates by reference and reallege paragraphs 1 through 32 of her Complaint, inclusive, as if restated verbatim herein.

34.  When Defendant Cooper rendered the above described medical care to Plaintiff Abor-Watson during April 2004, there was a doctor-patient relationship between Defendant Cooper and Plaintiff Abor-Watson which gave rise to a legal duty of care to conform her medical practice and treatment of Plaintiff Abor-Watson to that standard of care which, under similar circumstances, is ordinarily employed by physicians practicing obstetrics and gynecology.

35.  In connection with the medical care provided to Plaintiff Abor-Watson in April 2004, Defendant Cooper deviated from that standard of care which, under similar conditions and like circumstances, is ordinarily employed by medical doctors practicing obstetrics and gynecology. These breaches of the applicable standard of care proximately caused Plaintiff Abor-Watson to suffer, among other things, perforations of her uterus and sigmoid colon leading to pericolic abscess, intra-abdominal infection and extensive intra-abdominal adhesions, large left tuboovarian abscess, multiple adhesions and pustular exudates of the left tube and ovary, and a pyogenic left ovary. These conditions resulted in, among other things, hospitalization between April 25 – May 7, 2004, major surgery on April 27, 2004, additional hospitalization between

July 25 and August 3, 2004, a second operation on July 25, 2004, surgical removal and permanent loss of her left fallopian tube and ovary, permanent damages to her right fallopian tube and ovary, permanent pelvic and intra-abdominal scar tissue secondary to abscesses and adhesions, permanent abdominal scarring, permanent impairment of reproductive function, use of colostomy between April 27 and July 25, 2004, significant medical expenses and loss of income, and significant past and future mental and physical pain and suffering.

36.  Specifically, among other negligent acts and/or omissions, Defendant Cooper breached and/or deviated from the applicable standard of care by:

   a.  negligently failing to perform the April 2, 2004 D&C procedure with the assistance of ultrasound given the suspected presence of multiple uterine fibroids, the known post-partum condition of her uterus, and increased risks of uterine perforation under the circumstances;

   b.  negligently failing to recognize or appreciate that she had caused a perforation of Ms. Abor-Watson's uterus while performing the D&C procedure on April 2, 2004;

   c.  negligently expanding and exacerbating the perforation of Ms. Abor-Watson's uterus by continuing the D&C procedure and causing the curettage device to pass through the opening and into Ms. Abor-Watson's abdominal cavity;

   d.  negligently causing infected uterine tissue and materials to be moved outside of the uterine cavity and into Ms. Abor-Watson's abdominal cavity;

   e.  negligently failing to recognize or appreciate that the measurements or estimates of uterine size made by Dr. Cooper during the April 2 D&C were inconsistent with known facts about the probable size of Ms. Abor-Watson's uterus and thereby negligently failing to realize that she had not made proper entry into the uterine cavity during performance of the April 2, 2004 D&C procedure;

 f. negligently causing injury to Ms. Abor-Watson's sigmoid colon during performance of the April 2, 2004 D&C procedure;

 g. negligently failing to sufficiently investigate and evaluate the cause of Ms. Abor-Watson's symptoms and complaints when she returned to the E. Alabama Women's Clinic on April 20, 2004, and negligently assuming that such complaints and symptoms were related solely to degenerative myomes; and

 h. otherwise negligently failing to comply with the standard of care applicable to the performance of the D&C procedure on April 2, and response to Ms. Arbor-Watson's complaints during the several weeks thereafter.

37. In light of the above, Defendant Cooper is liable for, and Plaintiff hereby seeks to collect, all special and general damages stemming from or associated with the injuries and damages described above including, without limitation, all of Plaintiff Abor-Watson's past and future medical expenses, past and future loss of income, physical disability, permanent scarring and disfigurement, impaired reproductive capabilities, past and future physical and mental pain and suffering, past and future anguish and emotional distress.

## COUNT II

### VICARIOUS LIABILITY OF DEFENDANT E. ALABAMA WOMEN'S CLINIC FOR THE TORTS OF DEFENDANT COOPER

38. Plaintiffs incorporate by reference and reallege paragraphs 1 through 37 of their Complaint, inclusive, as if restated herein verbatim:

39. In February through April 2004, Defendant E. Alabama Women's Clinic employed or otherwise had an agency relationship with Defendant Cooper, and the medical care and treatment provided to Plaintiff Abor-Watson by Defendant Cooper during April 2004 took

place during the course and scope of her ownership, employment or agency relationship with Defendant E. Alabama Women's Clinic. Thus, pursuant to the doctrine of *respondeat superior,* Defendant E. Alabama Women's Clinic is legally and vicariously liable for any ordinary negligence, professional negligence and/or medical malpractice committed by Defendant Cooper that proximately caused or contributed to the injuries and damages suffered by Plaintiff Abor-Watson.

40.     WHEREFORE, Plaintiff demands judgment against Defendant Cooper and Defendant E. Alabama Women's Clinic under Counts I and II, jointly and severally, for general, special and compensatory damages in amounts well in excess of $75,000.00, for all interest allowed by law, for costs of this action, and for such additional relief as this Court might deem appropriate.

PLAINTIFF DEMANDS TRIAL BY JURY.

Dated this 30th day of March, 2006.

RAGLAND & JONES, LLP

_____
Daniel A. Ragland
Georgia Bar No. 003340

Resurgens Plaza, Suite 2250
945 E. Paces Ferry Road, N.E.
Atlanta, GA  30326
(404) 842-7245 Phone
(404) 842-7222 Fax

FUNDERBURK, DAY & LANE

_____
Kenneth L. Funderburk
Alabama Bar No. FUN002

P.O. Box 1268
1313 Broad Street
Phenix City, AL 36868-1268
(334) 297-2900 Phone
(334) 297-2224 Facsimile

ATTORNEYS FOR PLAINTIFFS